UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>EXTENDED STAY, INC. *et al.*,<br><br>Debtors. | Chapter 11 Case No.<br><br>No. 09-13764 (JMP)<br><br>(Jointly Administered) |
| WALKER, TRUESDELL, ROTH & ASSOCIATES, as Trustee for and on behalf of the EXTENDED STAY LITIGATION TRUST,<br><br>HOBART TRUESDELL, as Trustee for and on behalf of the Extended Stay Litigation Trust, and<br><br>THE EXTENDED STAY LITIGATION TRUST,<br><br>Plaintiffs,<br><br>v.<br><br>The Blackstone Group, L.P., *et al.*,<br><br>Defendants. | Civ. No. 11-cv-5394 (SAS)<br>Adv. Pro. No. 11-2398 (JMP)<br><br>**PLAINTIFFS' COMBINED REPLY IN FURTHER SUPPORT OF THE MOTIONS TO WITHDRAW THE REFERENCE**<br><br>**ORAL ARGUMENT REQUESTED** |
| WALKER, TRUESDELL, ROTH & ASSOCIATES, as Trustee for and on behalf of the EXTENDED STAY LITIGATION TRUST,<br><br>HOBART TRUESDELL, as Trustee for and on behalf of the Extended Stay Litigation Trust, and<br><br>THE EXTENDED STAY LITIGATION TRUST,<br><br>Plaintiffs, | Civ. No. 11-cv-5397 (SAS)<br>Adv. Pro. No. 11-2254 (JMP) |

| | |
|---|---|
| v.<br><br>The Blackstone Group, L.P., *et al.*,<br><br>Defendants. | |
| WALKER, TRUESDELL, ROTH & ASSOCIATES, as Trustee for and on behalf of the EXTENDED STAY LITIGATION TRUST,<br><br>HOBART TRUESDELL, as Trustee for and on behalf of the Extended Stay Litigation Trust, and<br><br>THE EXTENDED STAY LITIGATION TRUST,<br><br>Plaintiffs,<br><br>v.<br><br>THE BLACKSTONE GROUP, L.P., *et al.*,<br><br>Defendants. | Civ. No. 11-cv-5396 (SAS)<br>Adv. Pro. No. 11-2255 (JMP) |
| WALKER, TRUESDELL, ROTH & ASSOCIATES, as Trustee for and on behalf of the EXTENDED STAY LITIGATION TRUST,<br><br>HOBART TRUESDELL, as Trustee for and on behalf of the Extended Stay Litigation Trust, and<br><br>THE EXTENDED STAY LITIGATION | Civ. No. 11-cv-5395 (SAS)<br>Adv. Pro. No. 11-2256 (JMP) |

TRUST,

Plaintiffs,

v.

LIGHTSTONE HOLDINGS, LLC, *et al.*,

Defendants.

# TABLE OF CONTENTS

**Page**

**PRELIMINARY STATEMENT** .......... 1

**I. Withdrawal of the Reference is Required.** .......... 3

**II. Permissive Withdrawal of the Reference is Warranted.** .......... 8

*A. The Core/Non-Core Distinction No Longer Governs.* .......... 8

*B. The Actions Are Non-Core Related To Matters.* .......... 9

*C. The Procedural Uncertainty Will Promote Inefficiency If The Matters Remain in Bankruptcy Court.* .......... 10

*D. Judicial Efficiency Is Served By Withdrawal.* .......... 11

**CONCLUSION** .......... 12

# TABLE OF AUTHORITIES

## Cases

*Granfinanciera v. Nordberg*,
492 U.S. 33, 56 (1989) .......... 4

*In re Blixseth*,
2011 WL 3274042 (Bankr. D. Mont. Aug. 1, 2011) .......... 4, 12

*In re Boricich*,
2011 WL 2600692 (Bankr. N.D. Ill. June 29, 2011) .......... 12

*In re Canopy Fin. Inc.*,
2011 WL 3911082 (Bankr. N.D. Ill. Sept. 1, 2011) .......... 12

*In re Howarth*,
2011 WL 4018255 (Bankr. D. Colo. Sept. 9, 2011) .......... 12

*In re Lehman Bros. Hldgs., Inc.* (JMP),
Adv. Proc. No. 10-03266, Dkt. No. 93, Aug. 15, 2011 .......... 8

*In re Orion Pictures Corp.*,
4 F.3d 1095 (2d Cir.1993) .......... 8

*In re Palazzola*,
2011 WL 3667624 (Bankr. N.D. Ohio Aug. 22, 2011) .......... 12

*In re Petrie Retail, Inc.*,
304 F.3d 223 (2d Cir. 2002) .......... 10

*In re Refco*,
628 F. Supp. 2d 432 (S.D.N.Y. 2008) .......... 10

*In re Teleservices Group*,
2011 WL 3610050 (Bankr. W.D. Mich. Aug. 17, 2011) .......... 12

*JPMorgan Chase, N.A. v. Charter Comm'n Operating, LLC (In re Charter Comm'n)*,
409 B.R. 649 (Bankr. S.D.N.Y. 2009) .......... 9

*McHale v. Citibank, N.A.*,
2009 WL 2599749 (S.D.N.Y. Aug. 24, 2009) .......... 8, 11

*Northern Pipeline v. Marathon*,
458 U.S. 50 (1982) .......... 2, 3

*Stern v. Marshall*,
131 S.Ct. 2594 (2011) .......... passim

*Winstar Holdings, LLC v. Blackstone Group, L.P.*,
No. 07 Civ. 4634, 2007 WL 4323003 (S.D.N.Y. Dec. 10, 2007) .......... 9, 10

## Statutes

28 U.S.C. § 1334(b) .......... 7

28 U.S.C. § 157 ..... 1

28 U.S.C. § 157(b)(2)(C) ..... 9

28 U.S.C. § 157(d) ..... 13

28 U.S.C. 157(b)(2)(F) ..... 9

28 U.S.C. 157(b)(2)(F)&(H) ..... 9

COLLIER ON BANKRUPTCY, ¶ 3.01[4][c][iv] (15th ed. 2004) ..... 9

The Bankruptcy Amendments and Federal Judgeship Act of 1984 (hereinafter "BAFJA") ..... 2, 3

**Other Authorities**

98 Stat. 333 (1984) ..... 2

Pub.L. No. 98-353 (H.R. 5174) ..... 2

Plaintiffs Walker, Truesdell, Roth & Associates and Hobart Truesdell, as "Trustee" for and on behalf of the Extended Stay Litigation Trust, submit this Combined Reply Memorandum of Law in Further Support of Plaintiffs' Motions[1] under 28 U.S.C. § 157 withdrawing the reference of these actions from the United States Bankruptcy Court to the United States District Court.

## PRELIMINARY STATEMENT

After *Stern v. Marshall* one thing ought to be beyond dispute. It should be recognized by the Defendants, all of them, that a bankruptcy judge cannot constitutionally enter final judgment in a purely state law cause of action against a non-creditor, absent consent of the parties to the bankruptcy court determining the matter. This simple statement of the effect of *Stern v. Marshall* ought not to be controversial.

The overwhelming majority of the counts in these lawsuits are state law causes of action. Fifty of the seventy-nine defendants in the actions now before the Bankruptcy Court[2] are not creditors. Most of the Defendants in these actions have not indicated their consent to bankruptcy

---

[1] Plaintiffs hereby respond to the following Oppositions: Blackstone's Opp. to Mot. to Withdraw the Reference, 11-cv-5394, 11-cv-5396 & 11-cv-5397 (SAS); Arbor's Opp. to Mot. to Withdraw the Reference, 11-cv-5394, 11-cv-5395 & 11-cv-5397 (SAS); PGRT ESH Inc's Opp. to Mot. to Withdraw the Reference, 11-cv-05394 & 11-cv-5397 (SAS); Mezzanine Loan Assignee Group Opp. to Mot. to Withdraw the Reference, 11-cv-5395 (SAS); Wachovia's Opp. to Mot. to Withdraw the Reference, 11-cv-5864 (SAS).

[2] The State Court Complaint is *Walker, Truesdell, Roth & Assoc., et al. v. The Blackstone Group, L.P., et al.*, Civ. No. 11-cv-5394 (SAS), Adv. Pro. No. 11-2398 (JMP) (the "Fiduciary Duty Action"). The Mirror Image Complaint is *Walker, Truesdell, Roth & Assoc., et al. v. The Blackstone Group, L.P., et al. (In re Extended Stay, Inc.)*, Civ. No. 11-cv-5397 (SAS), Adv. Pro. No. 11-2254 (JMP) (the "Mirror Image Action"). The LBO Complaint is *Walker, Truesdell, Roth & Assoc. v. The Blackstone Group, L.P. (In re Extended Stay, Inc.)*, Civ. No. 11-cv-5396 (SAS), Adv. Pro. No. 11-2255 (JMP) (the "LBO Action"). The Post-LBO Complaint is *Walker, Truesdell, Roth & Assoc. v. Lightstone Holdings, LLC (In re Extended Stay, Inc.)*, Civ. No. 11-cv-5395 (SAS), Adv. Pro. No. 11-2256 (JMP) (the "Post-LBO Action").

court jurisdiction, several have expressly refused to consent,[3] and the Trustee does not consent in light of the risk, among other things, that non-consenting defendants will use the constitutional infirmity of the Bankruptcy Court to avoid an adverse judgment.

The Trustee filed his Motions to Withdraw the Reference of the actions citing bases for both mandatory and permissive withdrawal. The Supreme Court has said, finally and indisputably, that the structure created by the Bankruptcy Amendments and Federal Judgeship Act of 1984 (hereinafter "BAFJA"),[4] passed in response to *Northern Pipeline v. Marathon*,[5] does not completely cure the constitutional problems identified in that landmark decision.

The Defendants want this Court to ignore *Stern v. Marshall* entirely. They take a literal approach to the statute, arguing that mandatory withdrawal of the reference can only occur if the lawsuit in question: (i) concerns a non-bankruptcy federal statute that regulates organizations or activities affecting interstate commerce, and (ii) the consideration of which must be necessary for the resolution of the proceeding. Defendants' approach, however, fails to appreciate that the Supreme Court's holding in *Stern v. Marshall* creates an overriding constitutional framework and threshold issues that trump the literal language of the statue. The Defendants' argument means that Pierce Marshall, the defendant in the counterclaim in *Stern v. Marshall*, would have been unable to seek mandatory withdrawal of the reference of that action either; a conclusion we think Chief Justice Roberts would not reach.

Defendants fail to recognize that *Stern v. Marshall* controls, and not necessarily section

---

[3] The Lightstone and Arbor Defendants (amounting to approximately fifteen defendants) have withheld consent and have reserved their right to a jury trial. Although the Blackstone Defendants have indicated that they will consent to the Bankruptcy Court's jurisdiction, a number of defendants have joined in Blackstone's responses without indicating whether they will consent.
[4] Pub.L. No. 98-353 (H.R. 5174), 98 Stat. 333 (1984).
[5] *Northern Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982).

157(d) of title 28. The Trustee acknowledges that section 157(d), the withdrawal statute, does not mention the constitutional infirmity of the bankruptcy court as a basis for either mandatory or permissive withdrawal of the reference. But that observation is meaningless. The statutory structure has been found constitutionally wanting, and courts must assess the law in that light, until Congress acts. The Supreme Court has determined that the Bankruptcy Court cannot enter final judgment against a non-consenting, non-creditor in state law causes of action. *Stern v. Marshall*, 131 S.Ct. 2594, 2620 (2011). Here we have state law causes of action brought against non-consenting, non-creditors. The mechanism for the Trustee to have these cases adjudicated in the proper forum is through the withdrawal of the reference.

## I. Withdrawal of the Reference is Required.

BAFJA was part of Congress's effort to "fix" the issues addressed in *Northern Pipeline v. Marathon*, where the Bankruptcy Court attempted to adjudicate state law contract rights against a non-creditor. In *Stern v. Marshall*, however, the Supreme Court observed the similarity between the pre-1984 bankruptcy regime and the regime resulting from BAFJA, and concluded that Congress had not succeeded:

> After our decision in *Northern Pipeline*, Congress revised the statutes governing bankruptcy jurisdiction and bankruptcy judges. . . . Congress permitted the newly constituted bankruptcy courts to enter final judgments only in "core" proceedings. (citations omitted).
>
> . . .
>
> With respect to such "core" matters, however, the bankruptcy courts under the 1984 Act exercise the same powers they wielded under the Bankruptcy Act of 1978. (citations omitted). As in *Northern Pipeline*, for example, the newly constituted bankruptcy courts are charged under § 157(b)(2)(C) with resolving "[a]ll matters of fact and law in whatever domains of the law . . ." (citations omitted).
>
> . . .

> It is clear that the Bankruptcy Court in this case exercised the "judicial Power of the United States" in purporting to resolve and enter final judgment on a state common law claim, just as the court did in *Northern Pipeline*. No "public right" exception excuses the failure to comply with Article III in doing so, any more than in *Northern Pipeline*.

*Stern v. Marshall*, 131 S.Ct. at 2610-11. BAFJA, therefore, did not completely resolve the *Marathon* problem where a Bankruptcy Court attempts to adjudicate a state law claim against non-creditors of the estate.

There are three basic actions now pending.[6] The LBO Action, which focused on the June 2007 leveraged buyout of the debtors; the Post-LBO Action seeking recovery of $400 million of post-leveraged buyout transfers; and the Fiduciary Duty Action against directors and officers for state law violations of their fiduciary duties to the debtors.[7] The overwhelming majority of the counts set forth in all the actions are state law claims.[8] Of the fourteen counts in the LBO Action, nine are state law causes of action.[9] Of the thirty-nine counts in the Post-LBO Action,

---

[6] Defendants argue that the lawsuits are against all of the trust beneficiaries. *See* Blackstone Opp. to Mot. to Withdraw the Reference pg. 6. That allegation is wrong. Creditors holding several hundred millions of dollars' worth of claims are not involved in these lawsuits.

[7] The Fiduciary Duty Action was removed to the Bankruptcy Court and will be the subject of an appeal regarding remand back to State Court. The fifth action, *i.e.*, the Mirror-Image Complaint, was filed solely to preserve the statute of limitations and will not proceed if the Fiduciary Duty Action does, as has been made clear numerous times. See, July 18, 2011 Letter to Judge Peck, annexed hereto as Exhibit 1.

[8] Fraudulent conveyance claims have been brought under state law as common law claims. *See Granfinanciera v. Nordberg*, 492 U.S. 33, 56 (1989) (explaining that fraudulent conveyance claims are "quintessentially suits at common law that more nearly resemble state law contract claims brought by a bankrupt corporation to augment the bankruptcy estate than they do creditors' hierarchically ordered claims to a pro rata share of the bankruptcy res."); *see also In re Blixseth*, 2011 WL 3274042, at *11 (Bankr. D. Mont. Aug. 1, 2011).

[9] The Trustee has sued for avoidance and recovery of actual and constructive fraudulent transfers under the New York Debtor & Creditor Law, and for subrogation.

twenty are state law causes of action.[10] All forty-two of the counts of the Fiduciary Duty Action are state law claims.

*Stern v. Marshall* does note that state law actions which must be substantially resolved as part of the claims allowance process may still be tried before the Bankruptcy Court. *Stern v. Marshall*, 131 S.Ct. at 2611. However, that situation does not exist in the Fiduciary Duty, LBO or Post-LBO Actions. Only ten of the fifty defendants in the Fiduciary Duty Action filed proofs of claim. These proofs of claim are unrelated to the subject matter of the lawsuits brought by the Trustee.[11] Therefore, judgment in the Fiduciary Duty Action will not resolve the proofs of claim. The LBO Action has nineteen defendants. Of these, only Bank of America has filed a proof of claim, primarily for mezzanine debt.[12] Again, the state law causes of action would neither resolve nor be resolved by the resolution of those proofs of claim. The Post-LBO Action does bring a number of claims against creditors who have filed proofs of claim. However, sixteen of the thirty-five Defendants in that action did not file claims, and as mentioned a number of defendants have indicated they will not consent to bankruptcy court adjudication of this matter. For this reason alone, withdrawal of the reference is required.

The reservation of rights by defendants who will not consent to Bankruptcy Court adjudication presents the Trustee with the issue which caused these motions to be filed. The

---

[10] The Trustee has sued for avoidance and recovery of actual and constructive fraudulent transfers under the New York Debtor & Creditor Law.

[11] For example, Bank of American and Bank of America Securities have filed claims for mezzanine loan debt. BHAC Capital IV LLC has filed a claim on an unidentified "note." A number of directors and officers including, but not limited to, David Lichtenstein, Joseph Teichman, Peyton "Chip" Owen, Jr., Guy R. Milone, Jr., and F. Joseph Rogers, have filed unliquidated claims for "indemnification pursuant to organizational documents." Moreover, F. Joseph Rogers, David Kim, and Gary DeLapp filed claims based on "change in control" agreements.

[12] All of the claims filed by LBO Action defendants were for the mezzanine loan debt.

Trustee's lawsuits were filed before the Supreme Court's decision in *Stern v. Marshall*. That case now presents the dissenting Defendants with an opportunity to question the constitutional propriety of an adverse judgment in the Bankruptcy Court. Even if mandatory withdrawal were not warranted, and it is, the Court should nevertheless grant the permissive withdrawal to assure that a judicial determination meets constitutional principles.

The Defendants claim that provisions of the Plan of Reorganization in the bankruptcy case foreclose any dispute about the Bankruptcy Court's jurisdiction. That is simply not so. In fact, the bankruptcy case record reflects that the reservation of jurisdiction contained in the Plan of Reorganization was to resolve issues totally unrelated to the Trustee's forum choice for the lawsuits. The Defendants have stated that Section 12.2 of the Extended Stay Plan unambiguously reserves exclusive jurisdiction over the lawsuits. However, section 12.2 of the Plan of Reorganization does nothing of the sort. That subsection only governs "any and all adversary proceedings…that may be pending on the Effective Date or that, pursuant to the Plan, may be instituted by *NewCo or the Reorganized Debtors* after the Effective Date." *See* Plan of Reorganization § 12.2, annexed hereto as Exhibit 2. The Plaintiffs are not NewCo or the Reorganized Debtors.

The Plan confirmation process supports the Plaintiffs' view. The debtors' memorandum in support of confirmation highlighted only three specific matters that made post-confirmation jurisdiction in the Bankruptcy Court necessary: (1) matters involving the Plan and the claims allowance and distribution process, (ii) disputes under the "Investment Agreement, the BHAC IP Transfer Agreement, or the Debt Financing Arrangements," and (iii) disputes arising under the Trust and Servicing Agreement or related to implementation of the Plan by the Trustee (defined in Section 1.144 of the Plan as "Wells Fargo Bank, N.A., as Trustee in Trust for holders of Mortgage Certificates"), Special Servicer, Operating Advisor and Controlling Holder. *See*

Debtors' Mem. in Support of Confirmation, No. 09-13764 (JMP) (Dkt. 1162), annexed hereto as Exhibit 3. There is no evidence in the record to suggest that requiring the Plaintiffs to prosecute the lawsuits in the Bankruptcy Court was part of the Plan of Reorganization. Indeed, the terms of the Litigation Trust Agreement make it clear that the Trustee has consented to the Bankruptcy Court resolving disputes about the Litigation Trust Agreement itself, and not the adjudication of the Trustee's lawsuits. *See* Litigation Trust Agreement ¶ 12.4, annexed hereto as Exhibit 4.

The Bankruptcy Court's confirmation order (which trumps the Plan of Reorganization and related documents) makes clear that exclusive post-confirmation jurisdiction over certain disputes was reserved only to the extent legally permissible. *Stern v. Marshall* explains what is "legally permissible" and creates a significant risk that the Bankruptcy Court's reservation of post-confirmation jurisdiction is constitutionally infirm, if that jurisdictional reservation is as broad as the Defendants advocate. This is true whether or not the Court deems this action to be a "core" proceeding.

Defendants continue to argue that this dispute is over whether federal courts have subject matter jurisdiction over the lawsuits. The Plaintiffs have never questioned "related to" subject matter jurisdiction under 28 U.S.C. § 1334(b), or whether the District Court has subject matter jurisdiction at all. Rather, the Plaintiffs have questioned whether the Bankruptcy Court reserved exclusive jurisdiction under the Plan of Reorganization over the Trustee's lawsuits and, if so, whether the exercise of exclusive post-confirmation jurisdiction is constitutionally permissible in light of *Stern v. Marshall*. We respectfully submit that the claimed expansive jurisdiction is constitutionally inappropriate.

Finally, Defendants argue that the District Court should not withdraw the reference because Defendants have decided that the Trustee's securities fraud counts will be dismissed. Plaintiffs believe the Defendants are wrong. However, this issue is obviously not the outcome of

a dismissal motion, but rather which court can decide these cases.

## II. Permissive Withdrawal of the Reference is Warranted.

Even if the Court does not agree that withdrawal of the reference is required here, the Court should find that permissive withdrawal is appropriate under these circumstances. As indicated in Plaintiffs' motion to withdraw the reference, permissive withdrawal is warranted where "cause" is shown. The District Court should consider a number of factors when deciding whether cause is shown, such as "whether the claim or proceeding is core or non-core, whether it is legal or equitable, and considerations of efficiency, prevention of forum shopping, and uniformity in the administration of bankruptcy law." *In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir.1993); *see also McHale v. Citibank, N.A.*, 2009 WL 2599749, at *4 (S.D.N.Y. Aug. 24, 2009). In light of the relevant factors, Plaintiffs are entitled to withdrawal of the reference.

### *A. The Core/Non-Core Distinction No Longer Governs.*

As a preliminary matter, prior to *Stern v. Marshall*, courts gave strong consideration to whether a claim was core or non-core. As Judge Peck has observed, however, after *Stern v. Marshall* the statutory designation of core or non-core is no longer a decisive factor:

> The constitutional infirmity to entry of a final judgment may exist despite the fact that Congress has denominated a particular proceeding as "core." Therefore, the distinction between "core" and "non-core" categories is not the decisive factor in concluding whether the Court has authority to enter a final judgment.

*In re Lehman Bros. Hldgs., Inc.* (JMP), Adv. Proc. No. 10-03266, Dkt. No. 93, Aug. 15, 2011 Cast Mgmt. Order in Relation to the Impact of *Stern v. Marshall*, at p. 3, annexed hereto as Exhibit 5.

The *Stern v. Marshall* majority made clear that "Congress may not bypass Article III simply because a proceeding may have *some* bearing on a bankruptcy case." *Stern v. Marshall*, 131 S.Ct. at 2618. Thus, the distinction is not necessarily that between core and non-core, but

rather "whether the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process." *Id.*

The *Stern v. Marshall* counterclaim was categorized as "core." *See* 28 U.S.C. § 157(b)(2)(C). The Supreme Court, however, held that Congress's grant of power to the Bankruptcy Court to adjudicate counterclaims to final judgments was improper. *Stern v. Marshall*, 131 S.Ct. at 2620. Similarly, fraudulent conveyance and preference actions are categorized as core. *See* 28 U.S.C. 157(b)(2)(F)&(H). *Stern v. Marshall* makes clear, however, that the Bankruptcy Court's power to enter final judgments in state law actions against does not depend on the core/non-core designation, but rather on whether a restructure of a debtor-creditor relationship is occurring.

*B. The Actions Are Non-Core Related To Matters.*

Even if the core/non-core distinction is relevant, the state law claims in the Trustee's lawsuits are not "core" matters. Courts caution against an "over-inclusive reading of [the] 'catch-all' subsections" of section 157 of title 28. *JPMorgan Chase, N.A. v. Charter Comm'n Operating, LLC (In re Charter Comm'n)*, 409 B.R. 649, 654 n.6 (Bankr. S.D.N.Y. 2009) (observing further that core jurisdiction is ". . . subject to the constitutional limits established in Marathon"); *see also Stern v. Marshall*, 131 S. Ct. at 2604-05. This caution ought to be heeded in light of *Stern v. Marshall.*

The causes of action brought by the Trustee arose before the bankruptcy case was initiated, and could have been brought before the petition was filed. Thus, the state law claims do not "arise in" the bankruptcy case. Matters that "arise in" a bankruptcy case are the types of matters closely tied to the administration of the bankruptcy estate itself. *Winstar Holdings, LLC v. Blackstone Group, L.P.*, No. 07 Civ. 4634, 2007 WL 4323003, at *3 (S.D.N.Y. Dec. 10, 2007) (citing COLLIER ON BANKRUPTCY, ¶ 3.01[4][c][iv] (15th ed. 2004)); *see also In re Petrie Retail,*

*Inc.*, 304 F.3d 223, 230-32 (2d Cir. 2002) (noting that suits arising from pre-petition conduct routinely handled outside of bankruptcy are not usually "core" matters). The Trustee's claims do not involve the interpretation of a confirmed plan, and they do not attempt to relitigate issues that have already been decided by the Bankruptcy Court. Instead, they are "garden-variety common-law claim[s] that most usually [are] brought outside of bankruptcy." *Winstar Holdings, LLC*, 2007 WL 4323003, at *3.

Defendants continue to cite *In re Refco*, 628 F. Supp. 2d 432 (S.D.N.Y. 2008), to argue that the mere transfer of claims to a litigation trust creates sufficient connection to a bankruptcy case so that all of the claims become core matters. *See* Blackstone Opp. to Mot. to Withdraw the Reference, pg. 18. To the extent that this argument held validity prior to *Stern v. Marshall* it no longer should. Speaking plainly, this argument would allow the transfer of a "garden-variety" pre-petition automobile accident case into a litigation trust, thus converting a fender bender into a federal court lawsuit that must exclusively be brought before the bankruptcy judge. Chief Justice Roberts, we again respectfully submit, would likely disagree.

C. *The Procedural Uncertainty Will Promote Inefficiency If The Matters Remain in Bankruptcy Court.*

Given the constitutional uncertainty, Plaintiffs sought discretionary withdrawal to avoid having the Trust tied up in procedural knots during a time when the law is far from settled. It should be clear now having the cases proceed in Bankruptcy Court will allow at least some of the Defendants to preserve a constitutional dispute for appellate review. This issue is precisely what Judge Gerber was concerned about in *In re BearingPoint. See generally In re BearingPoint, Inc.*, 2011 WL 2709295, at *1 (explaining that "there is a material risk . . . that especially with the inspiration of *Stern v. Marshall*, and the [defendants'] pointed reminder that [the Bankruptcy Court] wouldn't be authorized to enter final judgment, this action will be tied *in procedural knots*

by motion practice, here and in the District Court, exploiting asserted or actual inabilities on [the Bankruptcy Court's] part, as an Article I bankruptcy judge, to issue findings and orders"). By withdrawal of the reference, this Court can avoid that uncertainty.

To the extent that some of the Defendants may have a constitutionally sound basis to seek Bankruptcy Court determination of the claims against them, they stand next to many Defendants who do not, in the same lawsuit. Under these circumstances, the constitutional infirmity created by some of the Defendants threatens the Trust and Trustee in the same manner as were all the defendants similarly situated. Accordingly, it would promote efficiency and limit waste if the District Court were to withdraw the reference.

*D. Judicial Efficiency Is Served By Withdrawal.*

Defendants lightly assert that trial of this matter to a Bankruptcy Court, which may not have constitutional authority to render final judgment, and then prosecution of an appeal to this Court, will not result in increased cost. On its face, that argument is simply wrong. The easy solution, and the one which will save expense, is to permit withdrawal of the reference so that the final determination can be made by the court which will unquestionably have authority to render that determination. It is acknowledged that some pretrial matters could be handled in the Bankruptcy Court, were the District Court to so desire, without constitutional implication. But withdrawal of the reference allows the constitutional issues to be put to rest and allows the Trustee's efforts on behalf of the estate to proceed without the added costs of an entire new layer of judicial review.

In addition, there will no doubt be jury trial issues. As this Court has held, "a bankruptcy court cannot provide complete adjudication of a matter that is non-core and in which any party declines to consent to a jury trial by the bankruptcy court." *McHale v. Citibank, N.A.*, 2009 WL 2599749, at *4. Some of the Defendants have indicated they will seek a jury trial and, no doubt,

many others will. While the Court can await withdrawal of the reference until a later time on such a basis, given the constitutional inability of obtaining a Bankruptcy Court judgment for so many of these defendants there seems no reason to delay.

* * * * *

The uncertainty in the constitutional landscape arising from *Stern v. Marshall* will cause undue delay and cost to Plaintiffs. Defendants only cite cases that conclude that *Stern v. Marshall* is a narrow holding, yet omit the cases where courts have struggled with the Supreme Court's holding.[13] Regardless of which view is ultimately approved by the Supreme Court, *Stern v. Marshall* has created substantial uncertainty, which warrants withdrawal at this time to avoid any delay or inefficiency in the prosecution of these cases.

**CONCLUSION**

For all the reasons set forth above, the Plaintiffs' above-captioned lawsuits against Defendants require withdrawal of the reference. Plaintiffs, accordingly, respectfully move this

[13] *In re Blixseth*, 2011 WL 3274042, at *11-12 (Bankr. D. Mont. Aug. 1, 2011) (calling into question Bankruptcy Court's ability to render final judgments in fraudulent conveyance actions against a non-creditor); *In re Boricich*, 2011 WL 2600692, at *9 (Bankr. N.D. Ill. June 29, 2011) (explaining that "[*Stern v. Marshall*] calls into question whether a bankruptcy judge may enter a final money judgment of a state law claim in a nondischargeability action"); *In re Canopy Fin. Inc.*, 2011 WL 3911082, at *2 (Bankr. N.D. Ill. Sept. 1, 2011) (explaining that, in the context of fraudulent conveyance actions, "the language of *Stern* makes clear that the decision, while narrow, is at least broad enough to reach this case"); *In re Howarth*, 2011 WL 4018255, at *3 n.9 (Bankr. D. Colo. Sept. 9, 2011) (explaining, in the automatic stay context, that even where fraud and contract issues are found to be core proceedings, "under United States Supreme Court's ruling in *Stern v. Marshall*, it is arguable this Court may not address these questions because they are state law issues") *In re Palazzola*, 2011 WL 3667624, at *4-6 (Bankr. N.D. Ohio Aug. 22, 2011) (explaining that the plaintiff's § 1983 claim "is, in essence, a personal injury tort claim" and "[a]s such, it is the stuff of the traditional actions at common law tried by the courts at Westminster in 1789) (citations and quotation omitted); *In re Teleservices Group*, 2011 WL 3610050, at *1 (Bankr. W.D. Mich. Aug. 17, 2011) (indicating that "*Stern v. Marshall* reveals how misplaced [the Bankruptcy Court's] confidence has been" in entering "countless orders as final").

Court for an order withdrawing the reference of the Plaintiffs' adversary proceedings under 28 U.S.C. § 157(d).

Dated: New York, New York
September 23, 2011

Respectfully submitted,

**BAKER & HOSTETLER LLP**

/s/
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
Marc D. Powers
mpowers@bakerlaw.com
Matthew R. Goldman
mgoldman@bakerlaw.com
Benjamin D. Pergament
bpergament@bakerlaw.com
George Klidonas
gklidonas@bakerlaw.com

AND

Brian A. Bash (*pro hac vice* application forthcoming)
bbash@bakerlaw.com
Wendy J. Gibson (*pro hac vice* application forthcoming)
wgibson@bakerlaw.com
Baker & Hostetler LLP
PNC Center
1900 East 9th Street, Suite 3200
Cleveland, OH 44114-3482
Telephone: (216) 621-0200
Facsimile: (216) 696-0740

*Counsel for Plaintiffs Extended Stay Litigation Trust, and Hobart Truesdell and Walker, Truesdell, Roth & Associates, as Trustees of the Extended Stay Litigation Trust*